**Supreme Court**

No. 2015-162-Appeal.
(11-4001-1)

In re Izabella G.                                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Izabella G.                                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on May 4, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The respondent, Tony Gonzalez, appeals from a decree entered in the Family Court terminating his parental rights with respect to his daughter, Izabella G., who was born on August 2, 2007.[1]  On appeal, the respondent initially argued that the hearing justice erred, first, in terminating his parental rights based on his incarceration; second, in concluding that the Department of Children, Youth, and Families (DCYF) made reasonable efforts to maintain contact between him and Izabella; and, third, in determining that termination of the respondent's parental rights was in Izabella's best interest.  While this case was pending on appeal, the respondent submitted a supplemental briefing in which he contended that this Court's opinion in State v. Gonzalez, No. 2013-289-C.A. (R.I., filed March 29, 2016), which vacated his criminal convictions, required this Court to vacate the judgment in this case and remand the case to the Family Court for reconsideration.  Having carefully considered the memoranda filed by the parties and the arguments of counsel, we are of the opinion that cause

---

[1] Parts of the record, including the hearing justice's decision, refer to respondent's daughter as "Isabella."  However, the child's birth certificate spells the child's name "Izabella," and so shall we.

has not been shown, and we proceed to decide the appeal at this time. For the reasons set forth in this opinion, we vacate the decree of the Family Court and remand the case for further proceedings.

**Facts and Travel**

This case presents this Court with a unique circumstance in which the Family Court decree that terminated respondent's parental rights rested primarily on criminal convictions—namely, a conviction of first-degree murder—and their concomitant prison sentences that subsequently were vacated before the instant appeal was heard and decided. We briefly set forth the salient facts.

The respondent has been incarcerated at the Adult Correctional Institutions (ACI) since January 2012, after he was arrested in connection with a murder investigation. He subsequently was indicted by a grand jury for first-degree murder, assault with intent to commit murder, and discharging a firearm during the commission of a violent crime. Although at one time Izabella resided with respondent and his mother, at the time of respondent's arrest, Izabella was living with her mother—respondent's ex-wife—and maternal half-sister.

On March 27, 2012, DCYF received a report that Izabella's mother had been hospitalized for substance abuse and mental-health issues. At that time, Izabella and her half-sister were staying with their step-grandmother, Kristin Lomberto (Lomberto), who had been married to their mother's father before he passed away. DCYF obtained an ex parte order granting the agency temporary custody of Izabella and her half-sister, and the two children were formally placed with Lomberto. On March 30, 2012, DCYF filed a neglect petition against both respondent and Izabella's mother, which alleged that "the parents have failed to provide [Izabella] with a minimum degree of care, supervision[,] or guardianship." This was not the

family's first contact with DCYF. In particular, in October 2010, respondent was indicated for physical abuse when he admitted to tying Izabella's hands and feet in order to restrain the three-year-old child.

When DCYF again became involved with the family in March 2012, the agency initially set a goal of reunification between Izabella and her mother. According to a DCYF caseworker assigned to Izabella's case, respondent had not been "considered a permanency option for Izabella" "[b]ecause of his incarceration and the length of his incarceration." The respondent sought visitation with Izabella while he was incarcerated, but his motion at first was denied. The Family Court subsequently amended the visitation order, and respondent was permitted periodic supervised visits with his daughter at the ACI. The record reveals that Izabella appeared pleased to see respondent and disappointed when each visit ended. While respondent was incarcerated, he wrote more than sixty-five letters to Izabella and participated in an ACI parenting program.

On February 25, 2013, following a jury trial, respondent was convicted of the crimes set forth in the indictment, and he subsequently was sentenced to, inter alia, two consecutive terms of life imprisonment.[2] DCYF thereafter abandoned its initial goal of reunification between Izabella and her mother and prepared a new case plan, which provided that Lomberto would adopt both Izabella and her maternal half-sister. The respondent refused to sign the new case plan and objected to Lomberto's adoption of Izabella. The respondent preferred that Izabella be placed with his mother rather than Lomberto.

---

[2] The circumstances of that case, in which the judgment was vacated, are set forth in State v. Gonzalez, No. 2013-289-C.A. (R.I., filed March 29, 2016).

On November 7, 2013, DCYF filed a petition in the Family Court seeking to terminate respondent's parental rights with respect to Izabella.[3] In the petition, DCYF alleged that the child had been placed in its custody for at least twelve months, that the parents were offered or had received services to correct the situation that led to Izabella's placement in the agency's custody, and that there was not a substantial probability that she would be able to return safely to respondent's care within a reasonable period of time. Additionally, the petition alleged that respondent "is unfit by reason of conduct or conditions seriously detrimental to the child, such as [the] institutionalization of [respondent], including imprisonment, of such duration as to render it improbable for [him] to care for [Izabella] for an extended period of time."

A termination hearing was held in the Family Court in December 2014. On April 2, 2015, the Family Court issued a decree that terminated respondent's parental rights with respect to Izabella. The hearing justice found, by clear and convincing evidence, that respondent was an unfit parent pursuant to G.L. 1956 § 15-7-7(a)(2)(i), (3).[4] The hearing justice largely based the

---

[3] Izabella's biological mother consented to adoption of the child by Lomberto and is not a party to this appeal.

[4] General Laws 1956 § 15-7-7(a) provides, in relevant part:

> "The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:
>
> "* * *
>
> "(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

decision on her finding that respondent had been convicted of crimes of violence for which he was serving two consecutive terms of life imprisonment. She further found "that additional factors render [respondent] unfit and * * * render it highly improbable that [Izabella] would be able to return safely to his care within a reasonable period of time given her age and need for a permanent home":

> "[Izabella] has been in the care of DCYF for three years. At no time during the past three years has [respondent] been released from prison. Prior to his incarceration, his visits were supervised, and he was previously indicated for physical abuse of [Izabella] * * *. He has been convicted of first[-]degree murder, assault with intent to commit specified felonies, and discharge of a firearm during the commission of a violent crime. He presented no evidence of how he would provide for [Izabella]'s care in the highly unlikely event of his release."

Additionally, the hearing justice determined that "DCYF made reasonable efforts, in the circumstances, to encourage and strengthen the bond between [respondent] and [Izabella]" and that "it is in [Izabella]'s best interest to be adopted by Ms. Lomberto." Although the hearing justice noted that it was clear that Izabella and respondent have a loving connection, she found

---

> "(i) Institutionalization of the parent, including imprisonment, for a duration as to render it improbable for the parent to care for the child for an extended period of time; [or]
>
> "* * *
>
> "(3) The child has been placed in the legal custody or care of [DCYF] for at least twelve (12) months, and the parents were offered or received services to correct the situation which led to the child being placed; provided, that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home[.]"

that "that bond is not enough to deprive [Izabella] of a permanent loving home, where she can be secure for the remainder of her childhood."[5]

The respondent filed this timely appeal and initially presented the three aforementioned issues for our review. As noted, however, on March 29, 2016, while this appeal was pending, this Court vacated respondent's criminal convictions based on the illegal seizure of evidence in violation of the Fourth Amendment to the United States Constitution. See Gonzalez, No. 2013-289-C.A., slip op. at 2, 38. That case was remanded for a new trial. Id. at 2. Our decision to vacate respondent's criminal convictions raised additional issues in this case for which the parties filed supplemental briefing.

## Standard of Review

"On appeal, '[t]his Court reviews termination of parental[-]rights rulings by examining the record to establish whether the [Family Court] justice's findings are supported by legal and competent evidence.'" In re Amiah P., 54 A.3d 446, 451 (R.I. 2012) (quoting In re Victoria L., 950 A.2d 1168, 1174 (R.I. 2008)). "These findings are entitled to great weight, and this Court will not disturb them unless they 'are clearly wrong or the [hearing] justice overlooked or misconceived material evidence.'" Id. (quoting In re Victoria L., 950 A.2d at 1174).

## Analysis

The respondent contends that, without the criminal convictions and lengthy incarceration, the Family Court did not have sufficient factual support to find, by clear and convincing evidence, that respondent was an unfit parent. We do not disagree with this contention.

Our careful review of the record convinces us that the respondent's criminal convictions and concomitant prison sentences are so intertwined with the Family Court decision that it is

_____

[5] The hearing justice found that respondent's "desire that [Izabella] be placed with his mother is not relevant to his own fitness as a parent."

impossible to separate the convictions from the remaining findings. Although, in her decision, the Family Court justice noted that, "[i]n addition to the lengthy sentence[,] * * * the [c]ourt finds by clear and convincing evidence that additional factors render [the respondent] unfit," most of those factors directly or indirectly relate to the now-vacated criminal convictions. Those factors include: (1) "[Izabella] has been in the care of DCYF for three years"; (2) "[a]t no time during the past three years, has [the respondent] been released from prison"; and (3) "[the respondent] presented no evidence of how he would provide for [Izabella]'s care in the highly unlikely event of his release." Therefore, it is our opinion that the decision must be vacated in light of the changed circumstances. We make this holding mindful, however, that the respondent faces a new trial and has been incarcerated for much of Izabella's life, and that the factual circumstances, if established in this case, may serve as powerful evidence of unfitness.[6]

**Conclusion**

For the reasons set forth in this opinion, we vacate the decree terminating the respondent's parental rights with respect to Izabella and remand this case to the Family Court for further proceedings as expeditiously as practicable. On remand, the case need not be heard de novo. Rather, it is within the hearing justice's discretion whether to allow further evidence, as the hearing justice sees fit.

---

[6] At oral argument, the attorneys for all parties noted, upon information and belief, that, at that time, respondent was being held at the ACI awaiting retrial.



**TITLE OF CASE:**        In re Izabella G.

**CASE NO:**        No. 2015-162-Appeal.
        (11-4001-1)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   July 7, 2016

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Providence County Family Court

**JUDGE FROM LOWER COURT**:

        Associate Justice Sandra A. Lanni

**ATTORNEYS ON APPEAL:**

        For Petitioner: Karen A. Clark
                Department of Children Youth and Families

                Jennifer J. Kelly
                Court Appointed Special Advocate

        For Respondent: Paula Lynch, Esq.