November 29, 2018

**Supreme Court**

No. 2017-168-A.
(11-4001-1)

In re Izabella G.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Izabella G.                         :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court for oral argument on September 27, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The respondent, Tony Gonzalez (respondent or Gonzalez), appeals from a decree entered in the Family Court terminating his parental rights with respect to his daughter, Izabella G. (Izabella), who was born on August 2, 2007.  On appeal, the respondent argues that the Family Court justice erred by: (1) permitting a witness to provide expert testimony; (2) admitting the child's letter into evidence; and (3) taking judicial notice of adjudicative facts.  Lastly, respondent contends that the alleged errors were not harmless and require reversal.  We disagree.

Having carefully considered the memoranda filed by the parties and the arguments of counsel, we are satisfied that cause has not been shown, and we proceed to decide the appeal at this time.  For the reasons set forth herein, we affirm the decree of the Family Court.

**Facts and Travel**

This case previously was before this Court in *In re Izabella G.*, 140 A.3d 146 (R.I. 2016), on respondent's appeal from the original decree terminating his parental rights to Izabella in

accordance with G.L. 1956 § 15-7-7(a)(2)(i) and (3).[1] We vacated that decree, and the case was remanded to the Family Court. *In re Izabella G.*, 140 A.3d at 147. We recount only those facts we deem necessary to this appeal.

The procedural history of this case presents this Court with a complex procedural circumstance in which a decree terminating respondent's parental rights became so intertwined with respondent's criminal convictions that it could not stand. More than six years ago, on March 27, 2012, the Department of Children, Youth, and Families received a report that

---

[1] General Laws 1956 § 15-7-7(a) provides, in relevant part:

> "The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:
>
> "* * *
>
> "(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:
>
> > "(i) Institutionalization of the parent, including imprisonment, for a duration as to render it improbable for the parent to care for the child for an extended period of time;
> >
> > "* * *
>
> "(3) The child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months, and the parents were offered or received services to correct the situation which led to the child being placed; provided, that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home[.]"

Izabella's mother had been hospitalized for substance-abuse and mental-health issues. On March 30, 2012, DCYF filed a neglect petition against both respondent and Izabella's mother and an *ex parte* motion for temporary custody of Izabella based on allegations that the parents had failed to provide Izabella with "a minimum degree of care, supervision or guardianship." The DCYF was awarded temporary custody, and the child was placed with her maternal step-grandmother, Kristin Lynn Lomberto (Lomberto), with whom Izabella had been residing as a result of a private arrangement made between Izabella's mother and Lomberto.[2]

The respondent was incarcerated at the Adult Correctional Institutions pending trial for unrelated criminal charges, and he has remained incarcerated throughout these proceedings. At a pretrial hearing on the neglect petition, in July 2012, respondent admitted sufficient facts to support a finding of neglect, and Izabella was committed to the care, custody, and control of DCYF. The respondent subsequently was convicted of first-degree murder and other felonies. The respondent was sentenced, *inter alia*, to two consecutive terms of life imprisonment.

In November 2013, DCYF filed a petition in the Family Court seeking to terminate respondent's and mother's parental rights to Izabella. The petition alleged that, in accordance with § 15-7-7(a)(3), the child had been placed in DCYF custody for at least twelve months; the parents were offered services to correct the situation leading to the child's placement; and there was not a substantial probability that the child would be returned to the parents' care within a reasonable period of time. The petition also alleged that, pursuant to § 15-7-7(a)(2)(i), respondent was "unfit by reason of conduct or conditions seriously detrimental to the child, such as [the] institutionalization of [respondent], including imprisonment, of such duration as to

---

[2] Izabella has remained with Lomberto throughout these proceedings. Izabella's mother has consented to Lomberto's adoption of both Izabella and her half-sister, Nevaha.

render it improbable for [respondent] to care for [Izabella] for an extended period of time." Izabella's mother agreed to a direct consent adoption by Lomberto; she is not a part of this case.

A termination hearing as to respondent commenced on December 8, 2014, and concluded on January 26, 2015 (the 2014 termination hearing). The Family Court issued a decree on April 2, 2015 (the 2015 decree), terminating respondent's parental rights with respect to Izabella, based on its findings that respondent was an unfit parent pursuant to § 15-7-7(a)(2)(i) (parent unfit by reason of imprisonment) and § 15-7-7(a)(3) (the child has been in DCYF custody for twelve months). The respondent timely appealed.

On March 29, 2016, this Court vacated respondent's criminal convictions in *State v. Gonzalez*, 136 A.3d 1131 (R.I. 2016)[3]; and, on May 4, 2016, respondent's appeal from the 2015 decree came before us for argument. *See In re Izabella G.*, 140 A.3d at 146. We concluded that "respondent's criminal convictions and concomitant prison sentences [were] so intertwined with the Family Court decision that it [was] impossible to separate the convictions from the remaining findings." *Id.* at 149. This Court vacated the decree and remanded the case to the Family Court for further proceedings and directed that "[o]n remand, the case need not be heard *de novo*." *Id.* at 150. Rather, the decision to allow further evidence was within the hearing justice's discretion. *Id.*

On remand, the Family Court justice conducted a full hearing on the merits, with the parties free to present additional evidence. The proceedings concluded on November 22, 2016, and a decree that forms the basis of this appeal was entered on February 22, 2017.

---

[3] After a second trial relative to the aforementioned criminal charges, respondent was convicted on October 23, 2017. The respondent has appealed that conviction to this Court.

At the remand hearing, DCYF offered testimony by the following witnesses: respondent; DCYF caseworker Audrey Shaw (Shaw); Izabella's therapist, Christie Wilson (Wilson); and DCYF Child Protective Investigator Dawn Ellsworth (Ellsworth). The respondent was the first witness. Although respondent had previously testified about his relationship with Izabella as well as his involvement in raising the child, at the remand hearing he invoked his Fifth Amendment privilege against self-incrimination. However, respondent subsequently agreed to answer non-incriminating questions regarding his visits with Izabella, his employment at the ACI during his incarceration, and questions about a letter he wrote to Shaw in August 2013, in which he admitted that prior to his incarceration he had placed Izabella in a cold shower while she was having a tantrum. Nevertheless, despite the opportunity to present testimony concerning his parental fitness, respondent failed to offer any evidence of his actual ability to care for Izabella at that time or upon his release from the ACI.

The next witness to testify was Shaw, the DCYF caseworker assigned to Izabella's case. Shaw testified about case activity notes concerning Izabella and recounted her observations from visits she had with Izabella and Lomberto, as well as visits between Izabella and respondent. On cross-examination, Shaw was questioned specifically about DCYF Form 188 (Form 188), which respondent alleged was never produced by DCYF, despite a subpoena request.[4]

Wilson was then called to testify. She indicated that she was a licensed marriage and family therapist and had been practicing since 1990. As a result of the trauma that Izabella had experienced, Lomberto sought treatment for the child because of the significant emotional and

---

[4] Apparently, Form 188 sets forth the Disclosure of Permanency Planning Time Frames and outlines the parents' responsibilities and the time frames allowed by federal and state law to achieve reunification. The record refers to this form as "Form 188."

behavioral problems she was exhibiting.[5]  Wilson stated that she had been Izabella's therapist since 2012 and that Izabella was diagnosed with post-traumatic stress disorder, ADHD combined type, and oppositional defiant disorder.

Wilson testified about her observations and treatment with respect to Izabella, including her opinions and recommendations concerning contact between Izabella and respondent.  Based on Wilson's testimony, DCYF's counsel requested that the Family Court justice qualify Wilson as an expert witness.

Over respondent's objection, Wilson described a letter-writing exercise she used with Izabella as a part of her therapy treatment.  Wilson explained that she asked Izabella to write letters—which were not mailed or forwarded—in an effort to assist Izabella in expressing her feelings in a non-aggressive manner.  The letter in question had been dictated by Izabella to Wilson and was admitted into evidence.  In the letter, Izabella expressed anger towards respondent and her paternal grandmother.  During her testimony, Wilson discussed the contents of the letter and the discussions she had with Izabella during her therapy sessions.

After allowing voir dire of Wilson regarding her qualification, the Family Court justice qualified Wilson as an expert in the field of marriage and family therapy and, specifically, in the area of providing therapy to traumatized children.  The Family Court justice also found that Izabella's letter was part of the child's therapy and, thus, she admitted the letter as an exhibit.

---

[5] Izabella has a history of neglect, which includes both physical and emotional abuse.  The record demonstrates, without contradiction, that respondent physically abused Izabella in response to her temper tantrums.  For instance, respondent tied Izabella's hands and feet; put her in a cold shower; placed her in a room alone for six hours; and permitted her to be force fed.  As a result of the traumatic experiences Izabella endured, Wilson opined that Izabella had a fear of adults and was affected by her parents not being there for her.

Lastly, Ellsworth testified about her investigation of Izabella's case, including the disclosures of physical abuse which respondent committed in August 2010.[6]

On February 21, 2017, the Family Court justice issued a second decision, again terminating respondent's parental rights. A final decree that is the subject of this appeal was entered February 22, 2017 (the 2017 decree).

## Standard of Review

"On appeal, [t]his Court reviews termination of parental rights rulings by examining the record to establish whether the [Family Court] justice's findings are supported by legal and competent evidence." *In re Amiah P.*, 54 A.3d 446, 451 (R.I. 2012) (quoting *In re Victoria L.*, 950 A.2d 1168, 1174 (R.I. 2008)). "These findings are entitled to great weight, and this Court will not disturb them unless they are clearly wrong or the trial justice overlooked or misconceived material evidence." *Id.* (quoting *In re Victoria L.*, 950 A.2d at 1174). Such findings must be supported by clear and convincing evidence. *See id.*

## Analysis

Before this Court, respondent argues that the Family Court justice erred: (1) in allowing Wilson to testify as an expert; (2) in admitting into evidence the child's letter; and (3) in taking judicial notice of Form 188. Lastly, respondent argues that the claimed errors were not harmless and amounted to reversible error.

## Qualification of Wilson to Testify as an Expert

The respondent insists that Wilson was not qualified to offer an expert opinion in this case. Specifically, he argues that Wilson's testimony lacked adequate foundation and scientific

---

[6] On or about August 25, 2010, DCYF investigated an allegation of physical abuse of Izabella by respondent while she was three years old and in his custody. The DCYF indicated respondent for physical abuse, tying, and close confinement.

trustworthiness because she did not have a degree in child psychology and had not previously evaluated a child who had visited a parent in prison. However, we perceive no error in the trial justice's decision to qualify Wilson as an expert in the field of marriage and family therapy, and, specifically, in the area of providing therapy to traumatized children.

This Court has consistently held that "[t]he question of whether a witness is qualified to express an expert opinion is a matter that is committed to the sound discretion of the trial justice, and the exercise of such discretion will not be disturbed on appeal absent a showing of abuse." *Narragansett Electric Co. v. Carbone*, 898 A.2d 87, 95 (R.I. 2006) (quoting *Mangasarian v. Gould*, 537 A.2d 403, 405 (R.I. 1988)).

Rule 702 of the Rhode Island Rules of Evidence, which governs the admissibility of expert testimony, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion." Accordingly, "Rule 702 does not require that a proffered expert have a formal certification or specialization in a particular field." *State v. D'Alessio*, 848 A.2d 1118, 1123 (R.I. 2004). Rather, when determining whether a witness is qualified to testify as an expert, "[p]rime considerations * * * include evidence of the witness's education, training, employment, or prior experiences." *State v. Villani*, 491 A.2d 976, 979 (R.I. 1985).

As a licensed marriage and family therapist, Wilson possessed the education and experience in the relevant discipline to testify as an expert witness. The record before us amply demonstrates that Wilson's education and experience in various therapeutic programs and settings, including working with children with behavioral and emotional problems and children who had experienced trauma, qualified her to provide expert testimony in this case. Wilson

estimated that she had worked with over 1,000 children—many of whom were in foster care—and that, throughout her twenty-six-year career as a therapist, her work primarily focused on providing therapy to children who had a history of trauma.

In light of Wilson's "education, training, employment, [and] prior experiences[,]" we are of the opinion that the Family Court justice properly exercised her discretion to qualify Wilson as an expert witness. *Villani*, 491 A.2d at 979. The mere fact that Wilson did not have a degree in child psychology was not disqualifying. Moreover, the fact that Wilson had not worked specifically with children who had visited a parent in prison goes to the weight of her testimony, not its admissibility. *See D'Alessio*, 848 A.2d at 1124 (holding that the fact that an expert was not a specialist in neuropathology "might bear on the weight of [the] testimony, but not its admissibility").

The respondent also contends that the Family Court justice impermissibly permitted Wilson to render an expert opinion relative to the issues of the best interests of the child, parental unfitness, and visitation rights. However, this argument is unsupported by the record.

The Family Court justice unequivocally stated that she would not rely on Wilson's testimony as it related to respondent's fitness. She made clear that she was only considering Wilson's opinions as they related to the child's best interest; and, as an experienced trial justice, she was fully capable of considering Wilson's opinion for that limited purpose.[7]

---

[7] The Family Court justice clarified:

> "[Wilson's] expertise in this case is as to [Izabella], * * * what the results of her therapy are with regard to [Izabella], what her observations are with regard to [Izabella]. And those—some of those observations relate to mother; some of them relate to father. * * *
>
> "But in no way, I want to make clear, this [c]ourt is not going to rely on any opinions that Miss Wilson expresses or expressed * * *

*See In re Corryn B.*, 914 A.2d 978, 984 (R.I. 2007) (recognizing that "trial justices presiding over non-jury trials * * * possess the wisdom, training and experience necessary to sort through such exhibits and consider only the aspects that are 'reliable and probative of the issues relating to the [parent's] conduct.'" (quoting *In re Stephanie*, 660 A.2d 260, 261 (R.I. 1995))). Clearly, "Rhode Island law and practice concerning expert testimony 'makes helpfulness to the trier of fact the crucial issue.'" *In re Alexis L.*, 972 A.2d 159, 169 (R.I. 2009) (quoting Rule 702, Advisory Committee's Note).

Lastly, we are satisfied that Wilson did not offer expert testimony on the issue of visitation. Accordingly, we are satisfied that the Family Court justice did not abuse her discretion in qualifying Wilson as an expert and in relying on her testimony.

### Admission of Daughter's Letter into Evidence

In regard to respondent's argument that the therapeutic letter from Izabella that was dictated to Wilson should have been excluded as hearsay, and that it did not qualify under the hearsay exception for medical diagnosis and treatment,[8] we perceive no error.

---

as to [respondent's] fitness for the purposes of determining whether his parental rights should be terminated. It is only as to [Izabella's] best interest * * *."

[8] Rule 803(4) of the Rules of Evidence provides that the following are not excluded by the hearsay rule:

"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial."

- 10 -

It is well established that "[t]he admission of a statement under an exception to the hearsay rule is within the sound discretion of the trial justice and shall not be overturned unless clearly erroneous." *State v. Lynch*, 854 A.2d 1022, 1038 (R.I. 2004). Moreover, this Court has held that statements made to a therapist for treatment may be properly admitted in accordance with Rule 803(4). *See In re Jessica C.*, 690 A.2d 1357, 1363, 1364 (R.I. 1997) (holding that child's hearsay statements made during counseling were admissible pursuant to Rule 803(4) because the statements were pertinent and helpful to therapist's assessment of the child's treatment needs); *see also In re Emilee K.*, 153 A.3d 487, 494, 495 (R.I. 2017) (holding that child's disclosures of sexual abuse to evaluator during sexual-abuse assessments were admissible under Rule 803(4)).

Izabella's letter was admitted in accordance with Rule 803(4), based on the trial justice's finding that the letter was made in a therapeutic setting as a part of the child's therapy. As this Court clearly articulated in *In re Emilee K.*, "[w]e have never been hypercritical in our interpretation of Rule 803(4)[.]" *In re Emilee K.*, 153 A.3d at 495. Accordingly, we are satisfied that the Family Court justice properly admitted the letter pursuant to Rule 803(4).

Moreover, even if there were some hearsay infirmity, the use of this evidence was harmless in view of the overwhelming evidence in the record that supports the Family Court justice's finding that respondent was an unfit parent.

**Judicial Notice of Form 188**

We briefly pass on a separate evidentiary ruling with which respondent takes issue—that the Family Court justice abused her discretion in taking judicial notice of Form 188, the Disclosure of Permanency Planning form. Contrary to respondent's assertion, the record

- 11 -

indicates that the Family Court justice did not take judicial notice of Form 188, as that document was introduced into evidence by respondent's attorney at the 2014 termination hearing.

The respondent also argues that DCYF failed to produce a signed copy of Form 188 despite a subpoena request for the document. The respondent avers that Form 188 was dispositive of the issue of whether reasonable efforts towards reunification were made by DCYF. Given that Form 188 merely delineates a timeline for DCYF's reunification process, whether a signed copy was admitted into evidence was of no consequence to the Family Court justice's findings. The Family Court justice concluded that DCYF had made reasonable efforts to reunify respondent and Izabella. The Family Court justice reviewed the case plans that DCYF prepared. Additionally, DCYF workers testified that respondent was given the case plans and information on programs available at the ACI to improve his relationship with Izabella. Thus, we conclude that competent evidence supports the Family Court's findings and conclusions. Accordingly, respondent's arguments pertaining to Form 188 are without merit.

### Harmless Error

Lastly, respondent asserts that the errors he has raised cannot be characterized as harmless. Having concluded that defendant failed to establish record error, we reject this contention. "In order to effectively conduct a harmless error analysis, the particular evidence must be 'quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" *State v. Terzian*, 162 A.3d 1230, 1244 (R.I. 2017) (quoting *State v. Humphrey*, 715 A.2d 1265, 1276 (R.I. 1998)). Accordingly, "[i]n cases in which there is 'overwhelming additional evidence indicative of [a] defendant's guilt,' this Court has determined that erroneously admitted evidence constituted harmless error." *Id.* (quoting *State v. Perez*, 882 A.2d 574, 590 (R.I. 2005)).

- 12 -

In light of the uncontradicted evidence of parental unfitness in this case, we are satisfied that any errors complained of were harmless beyond a reasonable doubt. *See State v. Brown*, 626 A.2d 228, 234 (R.I. 1993) (holding that, in light of the overwhelming evidence, the trial justice's admission of evidence without a limiting instruction was harmless beyond a reasonable doubt).

## Conclusion

For the reasons stated herein, we affirm the decree of the Family Court terminating the respondent's parental rights with respect to his daughter, Izabella. The papers may be remanded to the Family Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Izabella G. |
| **Case Number** | No. 2017-168-A.<br>(11-4001-1) |
| **Date Opinion Filed** | November 29, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Sandra A. Lanni |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Dianne L. Leyden<br>Department of Children Youth and Families<br><br>Jennifer J. Kelly<br>Court Appointed Special Advocate<br><br>For Respondent:<br><br>Michael S. Pezzullo, Esq. |

SU-CMS-02A (revised June 2016)